# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Damien Kytrell Ford,

    Petitioner

v.

Calvin Johnson,[1] *et al.*,

    Respondents

Case No.: 2:21-cv-01742-APG-DJA

**Order Denying Amended Petition, Certificate of Appealability, and Motion for Hearing.**

[ECF Nos. 29, 61]

Petitioner Damien Kytrell Ford has filed a counseled First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. ECF No. 29. I now address the merits of the First Amended Petition, which asserts that the state district court violated his rights by excluding evidence and that trial counsel rendered ineffective assistance of counsel. Also before me are Ford's Motion for Hearing (ECF No. 61) and the respondents' Motion to Extend (ECF No. 62). For the reasons discussed below, I deny the First Amended Petition, Motion for Hearing, and a Certificate of Appealability. I grant the respondents' Motion to Extend.

## I.    BACKGROUND

### a.    Factual Background

On November 23, 2015, Ford, who also went by the alias "Seven," shot Dwayne Taylor six times, killing him, at The Crossings apartment complex in Las Vegas, Nevada. ECF No. 32-40 at 45, 56. Meah Smith, Taylor's girlfriend, testified at trial that she saw Ford shoot Taylor. *Id.* at 56. Smith testified that she witnessed a verbal altercation between Ford and Taylor about

---

[1] The state corrections department's inmate locator page indicates that Ford is incarcerated at High Desert State Prison (HDSP). Jeremy Bean is the current warden for that facility. At the end of this order, I direct the Clerk of the Court to substitute Jeremy Bean as Respondent in place of Calvin Johnson under Rule 25(d) of the Federal Rules of Civil Procedure.

1   two months prior to the shooting. *Id*. at 45.  During this altercation, Ford had gestured towards

2   his waistband indicating that he was carrying a firearm. *Id*. at 46.

3          Dantae Minor testified that he spoke to Taylor in an apartment in The Crossings on the

4   evening of the shooting. ECF No. 32-40 at 106.  Minor testified that Taylor relayed to him that

5   Taylor had a verbal altercation with Ford and that Ford threatened him about ten to fifteen

6   minutes before Taylor had entered the apartment. *Id*. at 109-10.  Taylor left the apartment and

7   Minor heard gunshots. *Id*. at 110-11.

8          Stephanie Turner, Ford's girlfriend, testified at trial that she picked Ford up at The

9   Crossings around the time of the shooting. ECF No. 32-45 at 33-38.  She testified that after

10  texting Ford that she arrived, she heard gunshots and drove 30 feet forward. *Id*. at 47.  Ford then

11  called her and asked her why she had left. *Id*. at 36-37.  Approximately four minutes later, Ford

12  arrived at Turner's vehicle. *Id*. at 37.

13         Ford unintentionally called a friend, Corey Jackson, during the shooting. ECF No. 32-45

14  at 52-54.  Jackson answered the call on speaker phone and Jackson's girlfriend, Patricia

15  Armstrong was present. *Id*. at 54.  Armstrong testified that she heard four or five gunshots during

16  the phone call. *Id*.  Later in the evening, Jackson spoke to Ford on speaker phone and Armstrong

17  heard Ford say that he thought he hit Taylor but wasn't sure. *Id*. at 55.

18         **b.  Procedural Background**

19         Following a four-day trial, a jury convicted Ford of second-degree murder with use of a

20  deadly weapon. ECF No. 33-2.  The state district court sentenced him to an aggregate term of

21  180 months to life. *Id*.  On direct appeal, the Supreme Court of Nevada affirmed the conviction.

22  ECF No. 33-33.  Ford filed a state habeas petition that was denied, and the Nevada Court of

23  Appeals affirmed the denial of relief. ECF Nos. 33-46, 33-71.

Ford filed his *pro se* federal petition. ECF No. 11.  Following appointment of counsel, Ford filed his first amended federal petition alleging five claims for relief. ECF No. 29.  I denied the respondents' motion to dismiss, deferring consideration of whether Ford can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to overcome the procedural default for Grounds 3 and 4. ECF No. 47.

## II.    GOVERNING STANDARD OF REVIEW

### a.  Review under the Antiterrorism and Effective Death Penalty Act

The standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA) is as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the

1  Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

2  case." *Id.* at 75.

3      "A state court's determination that a claim lacks merit precludes federal habeas relief so

4  long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

5  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652,

6  664 (2004)).

7                    **b.  Standard for Evaluating an Ineffective Assistance of Counsel Claim**

8      In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis

9  of ineffective assistance of counsel (IAC) claims, requiring a petitioner to demonstrate that:

10  (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and

11  (2) the counsel's deficient performance prejudices the petitioner such that "there is a reasonable

12  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

13  been different." 466 U.S. 668, 688, 694 (1984).  Courts considering an ineffective assistance of

14  counsel claim must apply a "strong presumption that counsel's conduct falls within the wide

15  range of reasonable professional assistance." *Id*. at 689.  It is the petitioner's burden to show

16  "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . .

17  by the Sixth Amendment." *Id*. at 687.  Additionally, to establish prejudice under *Strickland*, it is

18  not enough for the petitioner to "show that the errors had some conceivable effect on the

19  outcome of the proceeding." *Id.* at 693.  Rather, errors must be "so serious as to deprive [the

20  petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687.

21      Where a state court previously adjudicated the ineffective assistance of counsel claim

22  under *Strickland*, it is especially difficult to establish that the court's decision was unreasonable.

23  *See Richter*, 562 U.S. at 104-05.  In *Richter*, the Supreme Court clarified that *Strickland* and

§ 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted).  The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### c.  Standard for Evaluating Procedurally Defaulted Claims

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).  Where a petitioner fails to do so and therefore "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," federal habeas review "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

For claims of ineffective assistance of trial counsel, a petitioner may overcome cause for procedural default of the claim where (1) the claim of ineffective assistance of trial counsel is a "substantial" claim; (2) the "cause" consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective assistance of trial counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."[2] *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)

---

[2] Nevada prisoners are required to raise IAC claims involving trial counsel in an initial state-postconviction petition, which is the initial collateral review proceeding for purposes of applying *Martinez. See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

1  (quoting *Martinez*, 566 U.S. at 14, 18; citing *Coleman*, 501 U.S. 722).  An ineffective assistance

2  of trial counsel claim "is insubstantial" if it lacks merit or is "wholly without factual support."

3  *Martinez*, 566 U.S. at 14-16 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

4      "[T]he standard for evaluating the underlying trial counsel IAC claim during the *Martinez*

5  prejudice analysis is not as stringent as that required when considering the merits of the

6  underlying [*Strickland*] claim." *Leeds v. Russell*, 75 F.4th 1009, 1017-18 (9th Cir. 2023) (citing

7  *Michaels v. Davis*, 51 F.4th 904, 930 (9th Cir. 2022) ("[A] conclusion on the merits of [a trial

8  counsel IAC] claim under *Strickland* holds a petitioner to a higher burden than required in the

9  *Martinez* procedural default context, which only requires a showing that the [trial counsel IAC]

10  claim is 'substantial.' ")).  While review of trial counsel's actions in a *Martinez* prejudice

11  analysis is conducted under a more relaxed standard, the *Strickland* standard is applied with full

12  force when considering the actions of initial postconviction review counsel for a *Martinez* cause

13  analysis. *See Leeds*, 75 F.4th at 1022.  The requirements of cause and prejudice are distinct but,

14  "[t]he analysis of whether both cause and prejudice are established under *Martinez* will

15  necessarily overlap," as "each considers the strength and validity of the underlying ineffective

16  assistance claim.'" *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019).  On all such issues, if

17  reached, the court's review is *de novo*. *See, e.g.*, *Detrich v. Ryan*, 740 F.3d 1237, 1246-48 (9th

18  Cir. 2013); *Atwood v. Ryan*, 870 F.3d 1033, 1060 n.22 (9th Cir. 2017).

19  **III.    DISCUSSION**

20      **a.  Ground 1—Exclusion of Jackson's Admission Related to Bullets**

21      In Ground 1, Ford alleges that his Sixth and Fourteenth Amendment rights to present a

22  defense and to cross-examine witnesses were violated when the state district court excluded

23  evidence that Jackson had admitted to police that he owned the bullets that matched those used in

the shooting. ECF No. 29 at 7-9.  He asserts that at trial counsel intended to form reasonable doubt by: (1) attacking the credibility of key witnesses, Smith and Armstrong; (2) suggesting Jackson was an alternate suspect that was never investigated by police; and (3) showing that it was physically impossible for Ford to shoot Taylor given Ford's location immediately after the shooting. *Id*. at 8.

Ford asserts that because the state trial court did not permit him to present Jackson's statement, he was not allowed to present a defense or impeach Armstrong's testimony that Jackson was only holding the bullets for Ford. ECF No. 64 at 9-10.  He contends that this court owes no deference to the state appellate court's determinations because those determinations are contrary to and unreasonably applied Supreme Court authority and involve an unreasonable determination of facts. ECF No. 29 at 8-9.

### i. Additional Background Information

Armstrong informed detectives that there were two cases of bullets in her and Jackson's closet that weren't supposed to be there. ECF No. 32-45 at 56-58.  She initially discovered the bullets in the closet in mid-November. *Id*. at 58.  She contacted police a few days after the shooting and consented to a search. *Id*. at 71.  The boxes of bullets were not full and the headstamps on the back of the cartridge cases matched those that were found at the scene. *Id*. The defense intended to question a detective about a statement that Jackson made claiming ownership of the bullets. *Id*. at 10.  Detective Williams testified that Jackson was not a suspect because there was significant evidence that he was not near the apartment complex when the shooting took place. *Id*. at 84-85.

The state district court did not permit Ford to present the statement that Jackson made to police claiming that he owned the bullets found in his home, based on NRS 51.345(1). ECF No. 64 at 9.  That statute provides:

> A statement which at the time of its making so far tended to subject the declarant to civil or criminal liability that a reasonable person in the position of the declarant would not have made the statement unless the declarant believed it to be true is not inadmissible under the hearsay rule if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Jackson was incarcerated and was going to testify from a prison in Louisiana.  He was released shortly before trial, however, and could not be located.  Ford argued that because Jackson was a felon, his statement subjected him to criminal liability and should be admitted. ECF No. 32-45 at 10.

### ii.  State Court Determination

On direct appeal, the Supreme Court of Nevada held:

> Ford argues that the district court abused its discretion in excluding evidence that an unavailable witness admitted to owning bullets the police found that matched those used in the shooting, thus compromising his ability to present his theory of the case.  We disagree.  While there is no question that Ford had a constitutional right to present a defense and to cross-examine witnesses, *California v. Trombetta*, 467 U.S. 479, 486 (1984); *Ramirez v. State*, 114 Nev. 550, 557, P.2d 724, 728 (1998), he nonetheless was required to comply with established rules of evidence, *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Brown v. State*, 107 Nev. 164, 807 P.2d 1379, 1381 (1991).  NRS 51.345(1)(b) deems statements made by an unavailable witness that would subject the declarant to criminal liability as admissible.  And while the declarant in this case subjected himself to possible criminal liabilities by admitting that he was a felon in possession of ammunition, 18 U.S.C. § 922(g)(1), the district court was correct in noting Ford's lack of establishing, despite being given the opportunity to do so, assurances of the statement's trustworthiness, such as any corroboration. *See* NRS 51.345(1) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."); *Coleman v. State*, 130 Nev. 229, 241, 321 P.3d 901, 909 (2014) (identifying factors that are relevant to the inquiry of a statement's corroborating circumstances and

trustworthiness); *Walker v. State*, 116 Nev. 670, 676, 6 P.3d 477, 480 (2000) (stressing the statutory test for determining admissibility of statements against penal interest is whether the totality of the circumstances indicates the trustworthiness of the statement or corroborates the notion that the statement was not fabricated to exculpate the defendant).

ECF No. 33-33 at 5-6.

### iii.  Applicable Legal Standard

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Washington v. Texas*, 388 U.S. 14, 19 (1967) (explaining that an accused "has the right to present his own witnesses to establish a defense" and that "[t]his right is a fundamental element of due process of law"); *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001).  "[T]he Constitution [also] guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  A defendant's opportunity to be heard "would be an empty one if the State were permitted to exclude competent, reliable evidence ... when such evidence is central to the defendant's claim of innocence." *Id.*  This is because, "[i]n the absence of any valid state justification, exclusion of ... exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The United States Supreme Court, however, has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Crane*, 476 U.S. at 690. *See also United States v. Scheffer*, 523 U.S. 303, 308 (1998).  In fact, the

1  Supreme Court has indicated its approval of "well-established rules of evidence [that] permit

2  trial judges to exclude evidence if its probative value is outweighed by certain other factors such

3  as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South*

4  *Carolina*, 547 U.S. 319, 326 (2006).  Evidentiary rules do not violate a defendant's constitutional

5  rights unless they "infring[e] upon a weighty interest of the accused and are arbitrary or

6  disproportionate to the purposes they are designed to serve." *Id.* at 324 (alteration in original)

7  (internal quotation marks omitted). *See also Scheffer*, 523 U.S. at 315 (explaining that the

8  exclusion of evidence pursuant to a state evidentiary rule is unconstitutional only where it

9  "significantly undermined fundamental elements of the accused's defense").  Indeed, "[o]nly

10 rarely ha[s the Supreme Court] held that the right to present a complete defense was violated by

11 the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S.

12 505, 509 (2013).

13       Even when a state evidence rule permits the exclusion of evidence, a court conducting a

14 Confrontation Clause analysis must go further and determine that the restriction on the

15 defendant's right to confront the witness is not "arbitrary or disproportionate" to the purposes the

16 state evidence rule was designed to serve. *See Michigan v. Lucas*, 500 U.S. 145, 151 (1991).  The

17 Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has

18 the right to "be confronted with the witnesses against him." U.S. Const. amend. VI.  "[A]

19 criminal defendant states a violation of the Confrontation Clause by showing that the was

20 prohibited from engaging in otherwise appropriate cross-examination designed to show a

21 prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts

22 from which jurors … could appropriately draw inferences relating to the reliability of the

23 witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

10

1    The right to cross-examine is not limitless. *Fowler v. Sacramento Cnty. Sheriff's Dep't*,

2    421 F.3d 1027, 1037 (9th Cir. 2005).  Trial judges "retain wide latitude" to "impose reasonable

3    limits on such cross-examination based on concerns about, among other things, harassment,

4    prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only

5    marginally relevant." *Van Arsdall*, 475 U.S. at 679.

6    ### iv.  Analysis

7    The state supreme court's determination is neither contrary to nor constitutes an

8    unreasonable application of federal law, as determined by the Supreme Court, and is not based

9    on any unreasonable determinations of fact.  Ford argues that the state supreme court's decision

10   is contrary to *Holmes*, where the Supreme Court concluded that the exclusion of defense

11   evidence about a third party's alleged guilt even where there was strong evidence of the

12   defendant's guilt violated the defendant's constitutional right to present a defense.  Under the

13   circumstances, the Nevada appellate court's conclusion is objectively reasonable as the exclusion

14   of the statement did not deny Ford the right to present a complete defense or to cross-examine

15   witnesses.

16   As explained by the Nevada appellate court, Ford failed to establish that Jackson's

17   statement had the requisite assurances of trustworthiness. *See also Chia v. Cambra*, 360 F.3d

18   997, 1003 (9th Cir. 2004) ("It is clearly established federal law, as determined by the Supreme

19   Court, that when a hearsay statement bears persuasive assurances of trustworthiness and is

20   critical to the defense, the exclusion of that statement may rise to the level of a due process

21   violation.").  The state trial court articulated reasons for finding the statement to be unreliable

22   and the declarant was not available for cross-examination.  In addition, as noted by the state trial

23   court, the defense was free to challenge the detectives' investigation by questioning whether the

1   detectives investigated other individuals and the defense could argue that Jackson, or any other

2   individual, was the shooter.  Detective Williams, however, testified that Jackson was not a

3   suspect because significant evidence showed that Jackson was not near the apartment complex

4   when the shooting took place. ECF No. 32-45 at 85.

5          Excluding Jackson's statement did not significantly undermine fundamental elements of

6   Ford's defense.  Armstrong testified that she discovered the bullets in the closet about a week

7   before the shooting and testified that the bullets were not supposed to be there. ECF No. 32-45 at

8   58.  At closing, trial counsel nonetheless argued that it was illogical for Ford to "plan this

9   murder," by "drop[ping] off boxes of bullets at his friend's house prior to the event, take[ ]

10  bullets out of that box, and keep 'em with him, and then go run down to [Taylor] and kill him,"

11  particularly considering that there was no gun found. ECF No. 32-49 at 28.  In addition, the

12  defense highlighted that Armstrong testified that Ford had not been to her apartment in some

13  time. *Id*. at 27-28.

14         Ford did not demonstrate that the exclusion of Jackson's statement was arbitrary or

15  disproportionate to the purpose of the state's evidentiary rule.  The Supreme Court of Nevada

16  reasonably determined that the trial court did not abuse its discretion in excluding Jackson's

17  hearsay statement regarding ownership of the bullets.  Accordingly, Ford is not entitled to federal

18  habeas relief for Ground 1.

19         **b.  Ground 2—Ineffective Assistance re: Failure to Impeach Witness**

20         In Ground 2, Ford alleges that trial counsel rendered ineffective assistance for failure to

21  impeach Smith.  He asserts that trial counsel failed to impeach Smith based on her prior

22  statements to police that the person who shot Taylor went by the nickname Seven, that he was

23  tall, and that he was wearing a black hoodie on the night that he shot Taylor.  Ford is 5'9."

Photographs taken immediately after the shooting demonstrate that the apartment complex did not have lighting in communal areas.  He argues that given the minimal lighting and Smith's prior statements, trial counsel "should have been able to easily impugn the veracity of Smith's testimony." ECF No. 60 at 13.

In addition, Ford asserts that trial counsel failed to impeach Smith regarding her statement that she did not "play with" guns.  He asserts that trial counsel should have showed Smith a social media post of her holding a gun and elicited testimony regarding the post without admitting it.  He argues that if trial counsel properly impeached Smith, her credibility and testimony would have been questionable.

### i. Additional Background Information

During cross-examination, the defense asked Smith if she ever held or used guns. ECF No. 32-40 at 83.  In response, she testified that she didn't "play with guns." *Id*.  The defense then attempted to admit a social media post depicting Smith holding a gun. *Id*. at 92.  The trial court did not admit the social media post on the basis that it was impeachment on ancillary matters. *Id*. at 93.  In addition, Smith testified that there were no lights in the playground area, but the area was still lit from lights around the apartment complex. *Id*. at 68.  She testified that she first saw Ford coming down the stairs. *Id*. at 52.

### ii. State Court Determination

The Nevada Court of Appeals held:

Ford argued his trial counsel was ineffective for failing to object when the trial court refused to allow him to introduce evidence in order to impeach the credibility of a witness.  A party may impeach a witness's credibility on cross-examination by inquiring into collateral matters that pertain to the witness's truthfulness or untruthfulness, provided no extrinsic evidence is used. *Ford v. State*, 122 Nev. 796, 806, 138 P.3d 500, 507 (2006); see also NRS 50.085(3) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime, may not be proved by extrinsic evidence.

They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness.").

During trial, a witness testified that she did not communicate with Ford over social media and that she did not like guns. In response, Ford sought to impeach the witness's credibility by introducing social media messages between himself and the witness, which included a photograph depicting her with a firearm. The trial court informed Ford he could question the witness regarding the social media messages but the messages themselves were inadmissible because they were extrinsic evidence concerning a collateral matter. The record demonstrated that counsel urged the trial court to admit the messages, and Ford did not demonstrate objectively reasonable counsel would have raised additional objections following the trial court's refusal to admit them into evidence. Moreover, because the trial court properly informed Ford that he could cross-examine the witness regarding the messages in an effort to impeach her credibility but could not use extrinsic evidence during that questioning, Ford did not demonstrate a reasonable probability of a different outcome at trial had counsel raised additional arguments regarding the trial court's decision to decline to admit the messages into evidence. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 33-71 at 3-4.

### iii. Analysis

The Nevada Court of Appeals' decision rejecting the claims in Ground 2 withstands deferential review under AEDPA. The determination that Ford failed to demonstrate prejudice was not an unreasonable application of *Strickland*. The testimony that Ford argues that trial counsel could have elicited to impeach Smith does not overcome the evidence against Ford. The trial evidence was that Taylor had a verbal altercation with Ford and that Ford threatened him about 10 to 15 minutes before the shooting, as testified by Minor. In addition, Turner testified that she heard gunshots minutes before picking up Ford. Further, the jury heard testimony regarding the lighting of the apartment complex and saw photos depicting the area. ECF Nos. 32-40 at 68, 126-30. The defense highlighted at closing that a crime scene analyst testified that it was dark, distinguishing it from Smith's testimony. ECF No. 32-49 at 22. In light of the totality of the evidence, even if the jury had heard testimony impeaching Smith, including testimony

1  regarding her holding a gun, it is not reasonably probable that a different result would have

2  occurred.  Accordingly, Ford is not entitled to habeas relief for Ground 2.

3               **c.  Ground 3—Ineffective Assistance re: Proposed Plea Deal Advice**

4        In Ground 3, Ford alleges that trial counsel rendered ineffective assistance for advising

5  Ford to reject a favorable plea offer.  Two weeks before trial, the State offered Ford a deal for 8-

6  to-20 years in exchange for pleading guilty to voluntary manslaughter with use of a deadly

7  weapon.  Ford alleges that trial counsel advised him to reject the plea deal because the State was

8  proceeding on a theory of first-degree murder.  Trial counsel advised Ford that he would be

9  acquitted of the charges because there was insufficient evidence to prove first-degree murder.

10  Ford asserts that had his counsel explained that he could still be convicted of a lesser-included

11  offense, such as second-degree murder, and that he could receive a harsher sentence than the 8-

12  to-20 years offered in the plea deal, Ford would have accepted the State's offer.

13               **i.  Requirements of 28 U.S.C. § 2254(e)(2) and Request for Evidentiary
               Hearing**

14

15        Before resolving the dispute as to whether Ford can overcome the procedural default of

16  this claim under *Martinez*, I must determine whether I can consider the declarations (ECF Nos.

17  30-1, 30-2), or grant the Motion for Hearing (ECF No. 61) submitted in support of Ground 3. *See*

18  *Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (directing that, before facilitating evidence that was

19  not developed in the state-court proceedings, federal habeas courts must first determine such

20  evidence "could be legally considered in the prisoner's case") (citing *Shinn*, 596 U.S. at 389-90).

21        Generally, the merits of claims raised in a federal habeas corpus petition are decided on

22  the record that was before the state court when it adjudicated a claim. *See Cullen v. Pinholster*,

23  563 U.S. 170, 180-81 (2011).  AEDPA restricts a federal habeas court's authorization to hold an

evidentiary hearing where an applicant failed to develop a factual basis for a claim in state court proceedings:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B). The Supreme Court has held that although § 2254(e)(2) refers only to evidentiary hearings, its provisions apply to a federal habeas court's consideration of evidence. *See McLaughlin v. Oliver*, 95 F.4th 1239, 1248-49 (9th Cir. 2024) (acknowledging *Shinn* "reaffirmed that [2254(e)(2)]'s restrictions not only apply to evidentiary hearings, but also apply "when a prisoner seeks relief based on new evidence *without* an evidentiary hearing") (citing *Shinn*, 596 U.S. at 389; quoting *Holland v. Jackson*, 542 U.S. 649, 653 (2004)).

For purposes of determining whether a petitioner must first meet the prerequisites of § 2254(e)(2), the term "fail" means "the prisoner must be 'at fault' for the undeveloped record in state court." *Williams v. Taylor*, 529 U.S. 420, 432, 434 ("[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."). *See also Shinn*, 596 U.S. at 383 (affirming the prerequisites in § 2254(e)(2) apply only "when a prisoner 'has failed to develop the factual basis of a claim'"). "Diligence for purposes of [§ 2254(e)(2)'s] opening clause depends upon whether the prisoner made a reasonable attempt, *in light of the information available at the time*, to

investigate and pursue claims in state court; it does not depend ... upon whether those efforts could have been successful." *Id.* at 435 (emphasis added). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. *See also Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999) (denying evidentiary hearing because petitioner did not comply with state law that required petitioner to come forward with affidavits or other evidence to the extent his claim relied on evidence outside the record).

Ford relies on *Rodney v. Garrett*, 116 F.4th 947 (9th Cir. 2024). In *Rodney*, the Ninth Circuit found that the petitioner did not fail to develop the state court record within the meaning of the statute precluding an evidentiary hearing where the petitioner had requested appointment of post-conviction counsel during the initial review collateral proceeding and had argued that counsel was necessary for purposes of investigation and discovery. Similar to the petitioner in *Rodney*, Ford was not at fault for not developing the factual basis of his claims in his state habeas proceeding, and was diligent in attempting to do so, and therefore did not fail to do so within the meaning of § 2254(e)(2). Ford requested appointment of counsel in his state habeas action, but the state district court denied his request, and he was forced to proceed *pro se*. He meets the minimum threshold for diligence. Accordingly, Ford is not precluded from presenting evidence not developed in state court.

But Ford fails to explain what evidence would be presented at an evidentiary hearing other than his own and his father's testimony in support of their declarations weighed against his trial counsel's potential testimony regarding the communication of the terms of the proposed plea. In addition, as provided below, I have determined that Ford is not entitled to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual

1  allegations or otherwise precludes habeas relief, a district court is not required to hold an

2  evidentiary hearing.").  Accordingly, Ford's Motion for Hearing (ECF No. 61) is denied.

3          **ii.  Analysis**

4          The record is "sufficiently complete" to allow me "to hold without hesitation" that Ford's

5  IAC claim is not substantial. *Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012).  Ford cannot

6  establish a substantial IAC claim under the *Strickland* standard because he cannot demonstrate

7  deficient performance.  Counsel is "required to give the defendant the tools he needs to make an

8  intelligent decision" whether to plead guilty. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir.

9  2002).  Ford fails to demonstrate that his counsel failed to give him the tools he needed to make

10  an intelligent decision about pleading guilty.

11          Ford's counsel is presumed to have provided adequate plea advice to Ford, and Ford must

12  rebut that presumption to show that his counsel acted deficiently. *See Dunn v. Reeves*, 141 S.Ct.

13  2405, 2410 (2021) (explaining that the burden of rebutting the presumption that counsel acted

14  reasonably rests on the defendant); *see also Strickland*, 466 U.S. at 688 (explaining that

15  "[j]udicial scrutiny of counsel's performance must be highly deferential").  Beyond Ford's self-

16  serving declarations, Ford presents no showing that his counsel failed to give him adequate

17  advice regarding the proposed plea. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir.

18  2007) (rejecting an ineffective assistance of trial counsel claim, in part, because "[o]ther than

19  [the petitioner]'s own self-serving statement, there [was] no evidence that his attorney failed to

20  discuss potential defenses with him"); *Turner*, 281 F.3d at 881 (explaining that the petitioner's

21  "self-serving statement, made years later, that [his counsel] told him that 'this was not a death

22  penalty case' is insufficient to establish that [the petitioner] was unaware of the potential of a

23  death verdict").  As the *Turner* court explained, "If the rule [requiring more than self-serving

statements] were otherwise, every rejection of a plea offer, viewed perhaps with more clarity in light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer." *Turner*, 281 F.3d at 881. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the *Strickland* test first and need not address both prongs if the petitioner fails on one).

Because Ford's IAC claim is not substantial, Ford fails to overcome the procedural default of Ground 3. Ground 3 is dismissed as procedurally defaulted.

### d. Ground 4—Ineffective Assistance re: Failure to Object to Juror Dismissal

In Ground 4, Ford alleges that trial counsel rendered ineffective assistance for failure to object to the dismissal of the only black prospective juror. The State moved to have Prospective Juror No. 121, Mr. Payne, removed for cause based on his responses during voir dire. Ford asserts that "cause" was inextricably tied to Payne's race. He alleges that trial counsel was ineffective because trial counsel did not attempt to rehabilitate Payne and did not object to his removal.

### i. Additional Background Information

In response to a question posed by the state trial court regarding whether anyone had a bias, prejudice, or sympathy related to age, religion, race, gender or national origin that would affect their ability to be fair and impartial, Payne stated, "I just don't think that the American justice system really works for black people." ECF No. 32-38 at 21-22. Payne also provided that he experienced police brutality in 2002 at UNLV, consulted three different attorneys, but no court proceedings took place because no attorney wanted to take his case. *Id*. at 106.

Payne stated that he applied to be a police officer and during the application process, a detective told him to lie during the interview process. *Id*. at 121. As a result, he had "a very hard

time believing in … officers and their integrity." *Id.*  In response to questioning, Payne provided

that his negative experiences with law enforcement would affect his ability to sit on the case. *Id.*

at 160.  He stated that "being the only other black man other than the Defendant in this

courtroom," that he would "feel a little more sympathy for [Ford] than maybe [he] should, but

only because of my negative experiences with officers." *Id.*  He believed it would affect his

ability to be fair and impartial. *Id.* at 161.

### ii.  Applicable Legal Standard

The Supreme Court has held that the Equal Protection Clause forbids the challenging of

potential jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986).

In *Batson*, the Supreme Court outlined a three-step burden-shifting framework for evaluating

claims of discrimination in the exercise of peremptory challenges.  At step one, the moving party

bears the burden to "produc[e] evidence sufficient to permit the trial judge to draw an inference

that discrimination has occurred." *Johnson v. California*, 545 U.S. 162, 170 (2005).  Once the

proponent makes a prima facie showing, at step two "the burden shifts to the [prosecutor] to

explain adequately the racial exclusion by offering permissible race-neutral justifications for the

strikes." *Id.* at 168 (internal quotation marks omitted).  Finally, at step three, "[i]f a race-neutral

explanation is tendered, the trial court must then decide ... whether the opponent of the strike has

proved purposeful racial discrimination." *Id.* (internal quotation marks omitted).  "[T]he ultimate

burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent

of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (*per curiam*).

### iii.  Analysis

Ground 4 is not substantial within the meaning of *Martinez*. 566 U.S. at 14.  Ford fails to

demonstrate either that his counsel was deficient or resulting prejudice under *Strickland*.

1    To be entitled to relief, Ford must "overcome the strong presumption that defense

2    counsel's decision not to challenge the prosecutor's challenges was strategic." *Carrera v. Ayers*,

3    670 F.3d 938, 949 (9th Cir. 2011), *on reh'g en banc*, 699 F.3d 1104 (9th Cir. 2012).  In *Carrera*,

4    the Ninth Circuit explained that there may have been reasons defense counsel supported the

5    removal of Hispanic jurors, that counsel may in fact have been "pleased with the resulting jury,"

6    and that when the prosecutor challenged the Hispanic jurors, defense counsel "may have made a

7    split second decision" that the challenge was on permissible grounds and an objection would

8    have been futile. *Id. See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough

9    investigation of law and facts relevant to plausible options are virtually unchallengeable.").

10    Even assuming deficiency, Ford cannot show prejudice.  Ford fails to show a reasonable

11    probability that the outcome of the proceeding would have been different had counsel objected to

12    the State's peremptory challenges of Payne.  Considering Payne's responses that he had a hard

13    time believing in the integrity of police officers, that he had negative experiences with law

14    enforcement, and that he could not be fair and impartial, the state trial court could have found

15    that the State offered a race-neutral explanation and that Ford could not prove purposeful racial

16    discrimination.  Ford fails to demonstrate that the jury would have returned a different verdict,

17    but for trial counsel's failure to object to the State's peremptory challenge and failure to establish

18    a prima facie claim under *Batson*.

19    Because Ford's IAC claim is not substantial, Ford fails to overcome the procedural

20    default of Ground 4.  Ground 4 is dismissed as procedurally defaulted.

21    **e.  Ground 5—Ineffective Assistance re: Failure to Present Evidence at Trial**

22    In Ground 5, Ford alleges trial counsel rendered ineffective assistance for failure to

23    demonstrate at trial that it was impossible that Ford shot the victim based on the distance

between the location of the shooting and the location where Turner picked up Ford.  Although

trial counsel admitted two maps to show the jury where the shooting occurred and where Turner

picked up Ford, the maps did not convey the actual distance between the two locations.  In

addition, trial counsel did not introduce an exhibit to demonstrate that Ford could not have seen

Turner on Lake Mead Boulevard from the location of the shooting when he called her asking

why she had left.  Ford alleges that had trial counsel introduced an image that "placed the

shooting location in the larger context to show its relation to Lake Mead Boulevard," the image

would have shown that Lake Mead Boulevard was obstructed by various buildings at the time

Turner drove by, "such that Ford would not have been able to shoot Taylor and see Turner in her

case at approximately the same time." ECF No. 60 at 23.

### i. State Court Determination

The Nevada Court of Appeals held:

> Ford argued his trial counsel was ineffective for failing to investigate and present information concerning the shooting location.  Ford asserted counsel should have presented information to show that Ford was too far from the victim to have shot him.  The record demonstrated that counsel questioned witnesses regarding Ford's location during the events at issue and presented an exhibit depicting a map of the relevant area.  Ford failed to demonstrate that counsel's actions in this regard fell below an objective standard of reasonableness.  In addition, there was significant information presented at trial regarding Ford's whereabouts during and after the shooting, including an eyewitness who testified Ford shot the victim, and therefore, Ford did not demonstrate a reasonable probability of a different outcome at trial had counsel investigated and presented additional information regarding the shooting location.  Therefore, we conclude the district court did not err by denying this claim.

ECF No. 33-71 at 3.

/ / / /

/ / / /

/ / / /

### ii.  Analysis

The Nevada appellate court's decision is not contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

The Nevada Court of Appeals' conclusion that counsel did not render deficient performance was neither contrary to nor an unreasonable application of *Strickland*.  As stated by that court, trial counsel elicited testimony regarding Ford's location during the incident and presented a map of the relevant area.  At closing, trial counsel highlighted that Turner's testimony regarding where she picked up Ford directly contradicts Smith's testimony regarding the shooting and Ford leaving the scene. ECF No. 32-49 at 22.  Trial counsel further argued at closing that Ford sees Turner "otherwise he wouldn't know she's leaving," indicating that Ford "is already at the North end of the complex right after the shooting," which is a long distance to magically appear and see [Turner] pulling away." *Id*. at 29.

Even if trial counsel presented additional evidence demonstrating the distance between the two locations, Ford fails to demonstrate a reasonable probability of a different outcome at trial.  When considered in light of all of the evidence, trial counsel's failure to present additional evidence of the distance between the two locations did not prejudice Ford.  The jury heard testimony regarding where Ford was during the shooting and immediately after the shooting and were presented with maps of the apartment complex.  Accordingly, Ford is not entitled to habeas relief for Ground 5.

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Ford.  Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability (COA).  Therefore, I have *sua*

*sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner*, 281 F.3d at 864-65.  A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.*  Applying these standards, a certificate of appealability is unwarranted.

## V.    MOTION TO EXTEND

The respondents moved for an extension of time to file their response to Ford's Motion for Hearing. ECF No. 62.  I find that the request is made in good faith and not solely for the purpose of delay, and therefore good cause exists to grant the motion.  Accordingly, the respondents' motion is granted *nunc pro tunc*.

## VI.    CONCLUSION

I THEREFORE ORDER:

1.  Petitioner Damien Kytrell Ford's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 29) is DENIED.

2.  A certificate of appealability is DENIED.

3.  Ford's Motion for Hearing (ECF No. 61) is DENIED.

4.  The respondents' Motion to Extend (ECF No. 62) is GRANTED *nunc pro tunc*.

/ / / /

/ / / /

5. The Clerk of the Court is directed to substitute Jeremy Bean for respondent Calvin Johnson, enter judgment accordingly, and close this case.

DATED this 7th day of June, 2025.


_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE